## BASS *v.* AFRICAN METHODIST EPISCOPAL CHURCH.

1. A corporation chartered under the laws of a sister State, suing in the courts of this State, is not required to set out in its petition the terms of its charter showing its capacity to maintain the action.
2. Under the allegations of the petition the contract which the plaintiff seeks to have specifically performed is certain and definite in all the particulars essential to its enforcement.
3. It was erroneous to overrule the special grounds of the demurrer calling upon the plaintiff to name its agent through whom the contract was alleged to have been made and by whom the final installment of purchase-money was alleged to have been paid. The other grounds of the demurrer, general and special, were properly overruled.

No. 1710.   SEPTEMBER, 17, 1920.

Equitable petition.   Before Judge Park.   Hancock superior court.   October 16, 1919.

*Sibley & Sibley,* for plaintiff in error.

*T. M. Hunt* and *R. L. Merrill,* contra.

GEORGE, J.   The African Methodist Episcopal Church filed an equitable petition in the superior court of Hancock county against W. A. Bass, a citizen of that county.   The allegations of the petition in substance are as follows:   The plaintiff is a corporation chartered under the laws of the State of Ohio.   It has been in the actual possession of a church house and the land on which the same is situated in Hancock county for more than forty years. Its possession was permissive until November 5, 1913, on which date it entered into a contract with the defendant to purchase the church house and land on which the same was situated.   The land is described as follows: ˮ " The same fronting on the Sparta and Milledgeville public road; the amount of land to be conveyed to be two (2) acres; the boundaries of said two acres of land to begin at a certain designated pine tree on the Sparta and Milledgeville public road, just to the right of the road leading from said public road to the church house, and to run at right angles from the Sparta and Milledgeville public road by and beyond the church house from said public road, and then parallel to said Sparta and Milledgeville public road, and then at right angles from a corner, in the rear of the church house towards the Sparta and Milledgeville public road and parallel with the boundary line leading from Sparta and Milledgeville public road back to the Milledgeville and Sparta public road, and thence along the line of said road towards Sparta, to the pine tree on said public road at the beginning point; the church house to be in the center of the two acres of land."   The petitioner agreed to pay $200 for the two-acre tract of land, and after paying a portion of this amount made substantial and valuable improvements on the same.   Since the date of its purchase petitioner has remained in the possession of the land.   It has paid the full amount of the purchase-money, but the defendant refuses to execute a deed according to the contract.   Since the payment of the purchase-money the defendant has entered upon the premises, destroyed the trees upon the church-house grounds, removed the steps from the church building, and has attempted to exclude the petitioner from possession. The plaintiff prayed, that title to the two-acre tract of land for church and school purposes be decreed to be in it; that defendant

be enjoined from interfering with plaintiff's possession; and that it recover damages for the trespass. To this petition the defendant demurred generally and specially. The demurrer was overruled, and the defendant excepted.

Construing the action as an action for specific performance of a contract by which a landowner agreed to convey land to the plaintiff, a corporation created and existing under the laws of the State of Ohio, the right of the plaintiff to maintain the action is questioned in one ground of the demurrer. The petition does not set out the charter powers of the corporation. It is not averred that the corporation has the power or right to acquire or hold land in the State of Ohio. The plaintiff in error relies upon the decision in *Carver Cotton Gin Co.* v. *Barrett, 66 Ga.* 526. In that case a corporation created under the laws of Massachusetts filed a petition to recover an interest in certain realty alleged to. have been illegally sold for taxes and purchased by a cotenant or joint owner with the plaintiff. The judgment dismissing the petition on demurrer was affirmed by this court, on the ground that the petition failed to show title, either legal or equitable, in the complainant. In the course of the opinion by Jackson, C. J., it was said: "While this court recognizes the rule of comity, by which foreign corporations are permitted the privileges in this State which are granted them in other States, under .our Code, § 1675 [Civil Code of 1910, § 2203], yet we are not informed whether this corporation has, by charter, the right to hold real estate in Massachusetts, for its charter is not set out in the bill, nor is any statute of Massachusetts therein stated which grants it such a franchise. A corporation lives only by the breath which the legislature gives it, and can move nowhere and hold nothing, unless the power be granted by its creator. It may hold in Georgia what it had the power to hold in Massachusetts, unless against public policy here, but certainly nothing more. Courtesy to Massachusetts extends no further than to permit her child to do here what the child may do at home." The Civil Code of 1910, § 2203, provides: "Corporations created by other States or foreign governments are recognized in our courts only by comity, and so long as the same comity is extended in their courts to corporations created by this State." Section 2204 declares: "No foreign corporation shall exercise within this State

any corporate powers or privileges which by the constitution or laws of Georgia are denied or prohibited to corporations created by this State, or the exercise of which is contrary to the public policy of this State, anything in the charter or corporate powers of the foreign corporation to the contrary notwithstanding." Under the Civil Code, § 2206, no corporation created under the laws of another State shall own more than 5000 acres of land, except upon the condition of becoming a corporation under the laws of Georgia, with certain provisos not material here. Section 2216 enumerates certain powers common to all corporations created under the laws of this State, among them the powers to sue and be sued, to receive donations by gift or will, to purchase and hold such property, real or personal, as is necessary to the purpose of their organization, and to do all such acts as are necessary for the legitimate execution of this purpose. This and the preceding section merely enumerate certain powers incidental to corporate existence and which are impliedly conferred upon every corporation unless there is shown an intention to exclude them. It is of course true that a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. The rule of comity by which a foreign corporation is permitted to do business in this State does not change its nature as a foreign corporation and does not give it any powers which are not given it by its charter. Nevertheless all corporations have not only the powers expressly granted by the charter and certain powers incidental to corporate existence, but, in addition, they have all powers that are reasonably necessary or proper for the execution of the powers that are expressly granted, provided such powers are not withheld. Clark on Corporations (2d ed.), 115. The implied power to acquire and hold real and personal property is incidental to corporations. It is not an essential power. It is therefore limited to the purposes authorized by charter. In the absence of restrictions, express or by necessary implication, every corporation has the implied power to acquire and hold real property that may be reasonably necessary and proper to accomplish the purposes of its creation. In view of the foregoing generally accepted principles, it would seem more logical to presume that any contract of a corporation, whether for the purchase of land or personalty, is within the legitimate scope

and purpose of the corporation until the contrary appears; that every conveyance to a corporation authorized to acquire land for any purpose will be presumed to be for a lawful purpose until the contrary appears, the burden, in each instance, of showing the contrary being upon the objecting party. See *Kohlruss* v. *Zackery,* 139 *Ga.* 625, 632, 633 (77 S. E. 812, 46 L. R. A. (N. S.) 72); Clark on Corporations (2d ed.), 153, and cases cited in notes 198, 199. See also Bennington Iron Co. *v.* Rutherford, 3 Har. (18 N. J. L.) 105 (35 Am. D. 528); Lewis *v.* Bank, 12 Ohio, 132 (40 Am. D. 469). In Smith *v.* Weed Sewing Machine Co., 26 Ohio St. 562 it was held: "A foreign corporation suing in the courts of this State is not required to set out in the petition the terms of its charter showing its capacity to maintain the action." The Court of Civil Appeals of Texas, in the case of New State Land Co. *v.* Wilson, 150 S. W. 253 (2), ruled that "the petition in an action by a foreign corporation to enforce a contract for the purchase of lands need not allege that plaintiff had power under its charter to purchase land in Texas or to contract therefor." It is well settled that though a corporation derives its existence from the laws of the State creating it, yet it may contract anywhere. Bank of Augusta *v.* Earle, 13 Pet. 521 (10 L. ed. 274). It is also a party capable of suing in any court, even beyond the jurisdiction of the State creating it. "When a foreign corporation brings an action in the courts of another State, it is not necessary that its charter should be set forth in the declaration." 12 R. C. L. 100. See also 19 Cyc. 1318.

Moreover, the petition prays for the writ of injunction against a continuing trespass, and for judgment for damages to plaintiff's property. Whether the contract set out in the petition was in writing or rested only in parol is not alleged. In the sixth paragraph of the petition a receipt for a part of the purchase-money, signed by the defendant, is set forth. In this receipt the defendant certifies that he has "sold to the Colored M. E. Church, North, two acres of land that the church is now on for church purposes, for the sum of $200." In the seventh paragraph of the petition another receipt, under the hand and seal of the defendant, and executed before a notary public of Hancock county, is set out. This writing recites the payment of a stated sum "for two acres of land on the Hall place that the A. M. E. Church

is now using for church purposes. When the balance of $100 is paid, same will be deeded for church and school purposes only." When it is recalled that the plaintiff, according to its allegations, was in the actual possession of the premises, had made valuable improvements thereon after purchase, and had paid the purchase-money in full, it is apparent that the plaintiff was, under the rule in this State, clothed with a perfect equity, equivalent to legal title. See *DuBose v. Ball,* 64 *Ga.* 350; *Pitts v. McWhorter,* 3 *Ga.* 5 (46 Am. D. 405). The foundation of the doctrine that a perfect equity is the equivalent of legal title and will support ejectment is clearly enunciated in Judge Powell's Actions· for Land, § 138 et seq. As here applied, we merely assert that the contract and the writings set out in the petition were adequate to create and declare a trust; that the trust had become executed; that the legal title had passed by operation of law into the plaintiff. If this reasoning be sound, then, so far as the defendant is concerned, it is immaterial whether the corporation had power under its charter to acquire and hold land. Between the State and the corporation its power in this regard is material. See Cowell *v.* Springs Co., 100 U. S. 55 (25 L. ed. 547); Christian Union *v.* Yount, 101 U. S. 352 (25 L. ed. 888); *American Mortgage Co. v. Tennille,* 87 *Ga.* 28 (13 S. E. 158, 12 L. R. A. 529). If the plaintiff is in fact without charter power to acquire and hold land, will equity for that reason refuse a formal decree decreeing title in the plaintiff, under the allegations of the petition? It would appear that the defendant is estopped to question the power of the plaintiff. This question is not, however, for decision at this time, and we make no ruling upon the same. If the plaintiff in possession is in fact clothed with a perfect equity, equivalent to legal title, the writ of injunction will issue in a proper case to restrain interference by a third party with its possession; moreover, it may have judgment against a trespasser for injury to the land. *Peterson v. Orr,* 12 *Ga.* 464, 466 (58 Am. D. 484). We do not, however, place our ruling that the plaintiff, an Ohio corporation, may maintain the present action, upon the narrow ground indicated above. We hold broadly that a corporation chartered under the laws of a sister State, suing in the courts of this State, is not required to set out in the petition the terms of its charter showing its capacity to maintain the action.

Another ground of the general demurrer raises the question of the sufficiency of the description of the land. In addition to the descriptive terms set forth above, the petition discloses that the tract of land is located in Hancock county. It was for a long time owned by Mrs. Sarah Alfriend; later by her daughter, Miss Mary Alfriend. In 1913 the defendant purchased the land. The plaintiff was in the actual possession of the land at the time of the contract of sale. In one of the receipts given by the defendant to the plaintiff the land is described as "two acres of land on the Hall place that the A. M. E. Church is now using for church purposes." The more particular description of the land, quoted above, locates it on the Sparta and Milledgeville public road. It is objected that the land has no definitely described starting point, and that the beginning point, to wit, "a certain designated pine tree" on said public road, is an uncertain point. Even if this be conceded, it will be noted that the beginning point is "a certain designated pine" on said road, *"just to the right of the road leading from said public road to the church house."* The rule is well settled that the contract must be certain and unequivocal in all its essential terms, either within itself or by reference to some other agreement or matter, or it can not be specifically enforced. See *Dowling* v. *Doyle,* 149 *Ga.* 727 (102 S. E. 27). It is equally well settled that a declaration in ejectment must describe the premises in dispute with such definiteness that, in the event of a recovery by the plaintiff, the sheriff can execute the writ of possession from the description given. See *Darley* v. *Starr,* 150 *Ga.* 88 (102 S. E. 819). It is clear that the land has a definitely described starting-point. A surveyor would have no difficulty in locating such point from the description given in the contract, with the aid of competent extrinsic evidence. The further terms of the description given do not present such a case of uncertainty or patent ambiguity on their face as will authorize the court to dismiss the petition on demurrer.

3. The remaining grounds of the demurrer, general and special, except as noted below, are not well taken and do not require discussion. The petition was subject to special demurrer upon the ground that it failed to name the agent of the plaintiff by and through whom the contract with the defendant for the purchase of the land was alleged to have been made, and by and

through whom the final installment of the purchase-money was alleged to have been paid. The plaintiff did not amend to meet the grounds of special demurrer just above indicated. In the absence of amendment these grounds should have been sustained.

*Judgment affirmed in part and reversed in part. All the Justices concur.*